IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| PERMANENT GENERAL ASSURANCE CORPORATION OF OHIO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE NO.: 22-CV-00197-LAG |
| | : | |
| DANIEL MARK MINICK, MARK MINICK, MINICK INTERIORS, INC., PROGRESSIVE MOUNTAIN INSURANCE COMPANY, THE ESTATE OF MICHAEL THOMAS MORRIS, LYNTON GODWIN, and FREDRICK UPDIKE, | : | |
| | : | |
| Defendants. | : | |

## DANIEL MARK MINICK'S AND MINICK INTERIORS, INC.'S MOTION TO DISMISS

COMES NOW Daniel Mark Minick (herein, "Defendant") and Defendant Minick Interiors, Inc. (herein, collectively referred to as, "Defendants"), by and through undersigned counsel of record, and, files this, Motion to Dismiss, respectfully showing the Court the following:

### I. SUMMARY OF ARGUMENT

Before making the declaration Plaintiff requests, this Court must polish a crystal ball and look into the future. This action is tactical gamesmanship in response to an "Underlying State Law Claim". Plaintiff is requesting that this Court absolve it of responsibility if there is an excess judgment concerning the Underlying State Law Claim, but no judgment has occurred. Plaintiff seeks an advisory opinion on a hypothetical situation that does not and may never exist. Accordingly, this action is not "ripe" for adjudication and should be dismissed. Fed. R. Civ. P. 12(b)(1). Alternatively, this Court should decline to exercise its jurisdiction under 28 U.S.C.A. § 2201(a). Finally, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted.

## II. STATEMENT OF FACTS AS ALLEGED[1]

This case involves an insurer's duty to protect its insured from legal liability by settling claims within the policy limits when it has a reasonable opportunity to do so. As typical of such cases, this one arises from a tragic automobile collision resulting in catastrophic injuries. On June 24, 2022, Defendant Michael Thomas Morris was driving a vehicle that collided with a vehicle in which Defendant was an innocent passenger. (Doc 1, ¶1). According to the documents attached to the Complaint in this action, which is acknowledged to be authentic, Defendant suffered several bone fractures, a severe closed head injury, and incurred $23,196.75 in medical expenses within hours of the collision. (Doc. 1-1, pp.8). To date, Defendant has in excess of $141,463.74 in medical expenses.

Plaintiff Permanent General Assurance Corporation of Ohio (herein, "General") issued a policy of automobile liability insurance to Defendant Michael Thomas Morris that was in effect on the date of the collision and that provided liability coverage of $25,000.00 per person. (Doc. 1, ¶ 22). General does not allege that Defendant Michael Thomas Morris was covered under the policy. In fact, no direct reference is made to the policy in the Complaint and the General does not allege facts supporting the application of any provision of the policy that would provide coverage to Defendant Michael Thomas Morris. (Doc 1). Moreover, the General does not allege that Defendant Michael Thomas Morris was at fault in causing the June 24, 2022, collision thereby leaving the issue of liability unresolved for the purposes of this action. (Doc 1).

As is common with such claims, Defendant's attorney sent a time-limited demand to the General dated July 25, 2022. (Doc. 1-1). The demand letter explained that Defendant had incurred very close to the policy limits in medical damages because of the accident. (Doc. 1-1, pp 8). The demand letter attached medical bills itemizing the $23,196.75 in medical expenses as well as medical records, injury photographs, photographs of the scene and vehicles involved, and the motor-vehicle crash report, but the General did not attach them to its Complaint. (Doc. 1-1).

---

1.    If this action survives dismissal, the Court will learn that the General's Complaint presents a skewed version of the facts. For the purposes of this motion, however, Defendant treats the allegations of the Complaint as true.

The demand cited to recently revised O.C.G.A. § 9-11-67.1[2] which applies to demands concerning claims arising from motor vehicle collisions occurring on or after July 1, 2021. Consistent with that statute, the demand included a list of "Material Terms of Settlement" which are pertinent to this motion. Item 1 stated that the General would have 30 days from its receipt of the offer to accept it. (Doc. 1-1, pp. 10). Item 3 stated how the General must issue its acceptance and was consistent with O.C.G.A. § 9-11-67.1(e). (Doc. 1-1, pp. 10). Item 4 explained the amount of monetary payment requested and how the check for the General's policy limits should be payable. (Doc. 1-1, pp. 10). Item 7 described the party to be released, the claims to be released, and the type of release Defendant would execute in favor of Defendant Michael Thomas Morris. (Doc. 1-1, pp. 10).

Significantly, the General admits that it failed to comply with the direction of Item 4 of the demand concerning how the settlement draft was to be made. (Doc. 1, ¶ 5). Moreover, the General failed to abide by Item 3 concerning the demand's instructions as to how the General must issue its acceptance, but the General did not attach its initial acceptance to the Complaint. Tellingly, the General does not allege that met the conditions of the demand as written. (Doc. 1). Moreover, the General does not allege that it took advantage of the right "to seek clarifications" set forth in O.C.G.A. § 9-11-67.1(d) concerning any material term of settlement.

In an attempt to avoid protracted litigation, Defendant issued a second demand to the General on October 3, 2022 (Doc. 1-2). The General summarily and without any explanation rejected that demand, but the General did not attach its response to the Complaint.

On November 29, 2022, twenty days after the General's rejection of Defendant's second demand, the General filed its Complaint with this Court.

---

2.      This statute, as amended, became effective July 21, 2021, which explains the lack of decisions

Case 1:22-cv-00197-LAG   Document 18   Filed 01/05/23   Page 4 of 16

## III. ARGUMENT AND CITATIONS OF AUTHORITY

**A.    Under Georgia Law, the Insurer's Negligence or Bad Faith is Determined After There Has Been a Judgment in Excess of the Policy Limits.**

Because there has been no judgment in excess of Defendant Michael Thomas Morris's liability policy limits, there can be no determination concerning the General's negligent or bad faith failure to settle. This motion must be viewed considering Georgia law allowing an insured to recover against its liability insurer if the insurer negligently or in bad faith causes a judgment in excess of policy limits to be entered against its insured. As explained by the Supreme Court of Georgia:

> [t]he elements of a negligent or bad faith failure to settle a claim are straightforward: the insured may sue the insurer for failure to settle only when the insurer had a duty to settle the case, breached that duty, and its breach proximately caused damage to the insured beyond the damages, if any, contemplated by the insurance contract.

*GEICO Indemnity Company v. Whiteside*, 311 Ga. 346, 352, 857 S.E.2d 654, 661-662 (2021)(internal quotes omitted). In other words, "[a]n insurance company may be liable for the **excess judgment** entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal injury claim within the policy limits." *First Acceptance Insurance Company of Georgia, Inc. v. Hughes*, 305 Ga. 489, 492, 826 S.E.2d 71, 74 (2019) (emphasis added). An insured does not have a cause of action for negligent or bad faith failure to settle within the policy limits unless or until there is a judgment against the insured in excess of the policy limits. *Trinity Outdoor, LLC v. Central Mut. Ins. Co.*, 285 Ga. 583, 587, 679 S.E.2d 10, 12 (2009).

Indeed, Georgia law is replete with reference to the requirement that the underlying tort lawsuit must be concluded prior to making a determination as to whether an insurance company negligently failed to settle a tort claim within policy limits: "[a]n insurance company may be liable for the **excess judgment** entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." *Cotton States Mut. Ins. Co. v. Brightman*, 276 Ga. 683, 683, 580 S.E.2d 519, 521 (2003) (emphasis added). As explained by the Supreme Court of Georgia, the purpose of the rules associated with insurer negligence and bad faith is "intended to protect the financial interest of policyholders where continued

construing the portions of the statute at issue in this matter.

litigation would expose them to a **judgment exceeding their policy limits**". *Id.* at 686, 580 S.E.2d at 522 (emphasis added). These holdings make sense because if there is no excess judgment, the insured generally has less cause to complain concerning a failure to settle within the policy limits. If an insurer negligently or in bad faith fails to settle a case that does not result in a judgment in excess of policy limits, the insurer arguably caused no damage.

In this case, Defendant Michael Thomas Morris has not alleged damage. Moreover, the General has not alleged that its insured has suffered any damage; nor has the General alleged that there will be an excess judgment. This Court should begin its analysis with the realization that in cases like this, there is no bad faith or negligent failure to settle until and unless there is a judgment in excess of the policy limits.

**B.      This Matter is Not Ripe Because there is no Judgment Over which to Litigate.**

Because there has been no judgment in excess of Defendant Michael Thomas Morris's liability policy limits, the question of General's negligent or bad faith failure to settle is simply not ripe for adjudication. "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (affirming a district court that granted a Rule 12(b) motion to dismiss a case that was not ripe). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes [and] seeks to void entangling the courts in the hazards of premature adjudication." *Id.* at 589. A determination concerning ripeness "goes to whether the district court has subject matter jurisdiction to hear the case" and a case that is not ripe should be dismissed pursuant to Rule 12(b)(1). *Id.* at 590.

Whether an insurer negligently or in bad faith fails to settle a claim within the policy limits is not "ripe" for adjudication until and unless there is a judgment in excess of policy limits. *Permanent General Assur. Corp. v. Moore*, 341 F. Supp. 2d 579, 581 (D.S.C. 2004) (granting a motion to dismiss a declaratory judgment action filed by an insurer who declined to settle within the policy limits). An insurer may not seek a declaratory judgment concerning bad faith or negligent failure to settle prior to the existence of an excess verdict against the insured because the case "rests upon contingent future events that may not occur as

anticipated, or indeed may not occur at all." *Government Employees Ins. Co. v. Ourso*, 2006 WL 1995178, *1 (M.D. Fla.) (indicating that an insurer may not carve out a pre-litigation position and seek a declaratory judgment concerning that position). *See also*, *Travelers Cas. Co. of Connecticut v. Legree*, 2013 WL 3833045, *5 (D.S.C.) (dismissing counts seeking a declaration that an insurer acted in good faith because "it is not clear" that there would be a judgment in excess of the policy limits).

*Permanent* is similar to this case. In *Permanent*, a claimant offered to settle an auto accident claim within the policy limits. 341 F. Supp. 2d. at 580. The insured failed to accept the demand. *Id.* The insurer filed an action in federal court seeking a declaration that there was no bad faith, and the claimant filed a motion to dismiss. In granting the motion to dismiss, the court reasoned:

> The ripeness doctrine is drawn from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. Ripeness is peculiarly a question of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements…A declaratory judgment may not be given for a purely hypothetical situation or as an advisory opinion.

*Id.* at 581 (citations omitted and punctuation altered for clarity). The *Permanent* court concluded that the action was not ripe prior to the entry of an excess verdict because the insurer could not fulfill its burden of showing the existence of "a substantial controversy, between the parties having adverse legal interest, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* The court declined the insurer's request to "look into the future and stave off the threat of potential litigation." *Id.*

This Court should follow *Permanent*, *GEICO*, and *Travelers* by dismissing this action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Taking the allegations of the Complaint as true, liability in the Underlying State Law Claim is not decided. (Doc. 1). The General's desire for a judicial declaration "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *GEICO*, 2006 WL 1995178 at * 1. Thus, any work by this Court might be a waste of judicial resources. Even if there is a verdict for Defendant, the General has not alleged that it will be in excess of the $25,000.00 policy limits. Thus, there is no immediacy to the General's claims. The General's claims would improperly lead this Court to "engaging in speculation … through the review of potential or abstract disputes [and] premature adjudication." *Digital*, 121 F.3d at 589. This Court should avoid such hazards and dismiss the

Complaint as unripe.

**C.      This Court Should Exercise its Sound Discretion to Decline to Hear this Unnecessary Litigation.**

"[A] district court has substantial discretion in deciding whether to entertain a declaratory judgment action, even if the action properly falls within the court's jurisdiction." *Erie Indem. Co. v. Acuity, a Mut. Ins. Co.*, 2006 WL 2048310 *2 (N.D. Ga.) (exercising discretion to dismiss an insurer's declaratory judgment action). The Supreme Court has ruled that the discretion to decline jurisdiction is informed by matters of "practicality" and "wise judicial administration." *Id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). "The Declaratory Judgment Act is an enabling Act, which confers discretion on courts rather than an absolute right upon the litigant." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005). The Act "only gives the federal courts the competence to make a declaration of rights; it does not impose a duty to do so." *Id.* This discretion arises from the plain language of the Declaratory Judgment Action, which states that a district court "**may** declare the rights and other legal relations of any interested party seeking such declaration". 28 U.S.C.A. § 2201(a) (emphasis added).

*Erie* applies in this case. In *Erie*, an insurance company sought a declaratory judgment concerning whether it had excess coverage for a tort lawsuit in state court in which liability had not been determined. 2006 WL 2048310 *1. The *Erie* court declined to entertain jurisdiction, reasoning that if there was a defense verdict in the tort case, "neither insurer will have to pay [and] the difficult coverage issue will never have to be decided." *Id.* at *3.

These considerations counsel the dismissal of this case. Taking the allegations in the Complaint to be true, liability in the Underlying State Law Claim is not decided. If there is a defense verdict, the difficult issues raised by the General will never have to be decided. The issues the General raises are difficult, as the General is asking the Court to construe a newly revised statute that has yet to result in a single decision by the Georgia Court of Appeals or the Supreme Court of Georgia. This Court should exercise its discretion to avoid being the first to rule on a newly revised statute that is in derogation of common law prior to receiving guidance by a court providing the Rule of Decision.

**D.      The Complaint Fails to State a Claim for Which Relief May be Granted.**

**i.      Count I Fails to State a Claim, because No Settlement was Reached as a Matter of Law.**

The District Court for the Northern District of Georgia has summarized *Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted
> as true, to state a claim to relief is plausible on its face. A claim has facial plausibility when
> the plaintiff pleads factual content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a
> probability requirement, but asks for more than a sheer possibility that the defendant acted
> unlawfully. Where a complaint pleads facts merely consistent with the defendant's liability,
> it stops short of the line between possibility and plausibility of entitlement to relief.

*Kynes v. PNC Mortgage*, 2013 W: 4718294, *3 (N.D. Ga.) (granting motion to dismiss). "The Court,

however, is not required to accept Plaintiffs' legal conclusions." *Id.* at *2. "Nor will the Court accept as true a

legal conclusion couched as a factual allegation. *Id.* In ruling on a motion to dismiss, a court may consider

documents attached to a complaint. *Id.* at *4.

**1.      O.C.G.A. § 9-11-67.1 Does Not Create a Private Right of Action.**

Applying these rules, this Court can easily rule that Count I of the General's Complaint fails to state a

claim under the recently amended O.C.G.A. § 9-11-67.1. First, the plain language of that statute provides no

remedy to a liability insurer and no punishment or penalty to claimants making offers under the statute. Thus,

the statute provides no private right of action to the General against Defendant. This Court should dismiss the

claim on that basis alone.

**2.      General Lacks Standing to Seek Enforcement of Any Settlement Contract.**

Secondly, the General is speciously requesting that this Court enforce a settlement contract to which

the General was neither a party nor a third-party beneficiary. Under Georgia law, an action on a contract may

only be "brought in the name of the party in whom legal interest in the contract is vested" or "the beneficiary

of a contract made between other parties for his benefit". O.C.G.A. § 9-2-20(a)-(b). "For a third party to have

standing to enforce a contract…it must clearly appear from the contract that it was intended for his benefit."

*Backus v. Chilvis*, 236 Ga. 500, 502, 224 S.E.2d 370, 372 (1976). "The mere fact that he [a third party] would

benefit from performance of the agreement is not alone sufficient" to provide that third party with standing

concerning the enforcement of the contract. *Id.*, 224 S.E.2d at 372.

At no point does the General's Complaint allege in earnest that it was a party to the alleged settlement contract nor does the General allege that it was a third-party beneficiary to the alleged contract. (Doc. 1). The parties to the alleged settlement would have been Defendant and Defendant Michael Thomas Morris and not the General. This is made clear by Item 7 of the demand wherein Defendant offers to execute a limited release for the benefit of Defendant Michael Thomas Morris and not the General. (Doc. 1-1, pp. 10). This Court should dismiss the claim on this basis.

### 3. Under the Facts Alleged in the General's Complaint, the General Failed to Accept Defendant's Demand.

Under the facts alleged by the General in its Complaint, the General failed to accept Defendant's demand in accordance with O.C.G.A. § 9-11-67.1, as amended. "Statutes in derogation of the common law are construed strictly." *Heard v. Neighbor Newspaper, Inc.*, 259 Ga. 458, 458, 383 S.E.2d 533, 554 (1989). "This principle applies alike to those precepts of the common law that have been codified." *Id.*, 383 S.E.2d at 554. Under common law, "an offeror is the master of his or her offer and free to set the terms thereof." *Atkinson v. Cook*, 271 Ga. 57, 58, 518 S.E.2d 413 (1999). The common law rules are still in force and effect in the State of Georgia, "except where they have been changed by express statutory enactment or by necessary implication." *Humphreys v. State*, 287 Ga. 63, 70, 694 S.E.2d 316 (2010) (citations and punctuation omitted).

By its terms, the present version of O.C.G.A. § 9-11-67.1 maintained Georgia common law concerning unilateral contacts. First, the statute does not indicate that it outlaws unilateral contracts. If the Georgia Assembly wished to outlaw unilateral contracts "it could have done so explicitly. *Kothari v. Patel*, 262 Ga. App. 168, 173-174, 585 S.E.2d 97, 102 (2003). While O.C.G.A. § 9-11-67.1 does curtail what performance-based conditions may be included in a demand, the General Assembly expressly preserved two performance-based conditions: (1) to where and by what means written acceptance must be provided; and (2) that payment may be required to be provided within a specified time. O.C.G.A. § 9-11-67.1(e) and (g).

With respect to the method and means of acceptance, an insurer's ability to accept a demand by

accepting only those terms listed in O.C.G.A. § 9-11-67.1(a)(1) is *statutorily contingent* upon the insurer providing written acceptance in compliance with O.C.G.A. § 9-11-67.1(e). To effectuate a settlement under the provisions of O.C.G.A. § 9-11-67.1(b)(2) "[t]he recipient of an offer . . . **may** accept the same by **providing written acceptance** of the material terms outlined in subsection (1) of this Code section in their entirety." (emphasis added). Subsection (e) of the statute provides specific instructions concerning the delivery of written acceptance by dictating that an offer under the code section "shall include an address or a facsimile number or email address to which a **written acceptance** pursuant to subsection (b) of this Code section **may be provided**." O.C.G.A. § 9-11-67.1(e)(emphasis added). Notably, O.C.G.A. § 9-11-67.1(e) is written in the disjunctive and permits an offeror to dictate whether written acceptance may be provided to an address, facsimile number, or email address. An offeree's purported acceptance in a manner inconsistent with the offeror's direction as authorized by O.C.G.A. § 9-11-67.1(e) is a rejection of the offer.

Here, as master of the offer, Defendant was free to include any condition in the demand he wished, and that authority was limited only to the extent O.C.G.A § 9-11-67.1, as amended, changed that authority either by express statutory enactment or by necessary implication. *Humphreys*, 287 Ga. at 70. In compliance with O.C.G.A. § 9-11-67.1(e), Defendant's demand dictated that written acceptance may be provided to a physical address. (Doc. 1-1, pp. 10). Despite this clear direction, the General alleges it provided acceptance via email, facsimile, and to a physical location by way of a letter dated August 15, 2022, but that letter is not attached to Plaintiff's Complaint. (Doc. 1, ¶ 27). Moreover, the General's August 15, 2022, letter was sent to the incorrect address, but that letter was not attached to the Complaint. Under the facts as alleged by the General, no settlement was reached because the demand dictated that acceptance may be made only to a physical address, and not to an email or facsimile number. Consequently, the General failed to accept the demand and this Court should dismiss the claim on this basis.

### ii.   Count II Fails to State a Claim because the Demand Letter Complies with the Statute as a Matter of Law.

Count II of the General's Complaint mistakenly assumes the torts of negligent or bad faith failure to settle are claims based upon O.C.G.A. § 9-11-67.1. On the contrary, O.C.G.A. § 9-11-67.1 concerns the

formation of contracts, not tort claims. *Grange Mutual Casualty Company v. Woodard*, 300 Ga. 848, 848, 797 S.E.2d 814, 816 (2017). Under Georgia law, the torts of negligent or bad faith failure to settle are common law claims. "Statutes in derogation of the common law are construed strictly." *Heard v. Neighbor Newspaper, Inc.*, 259 Ga. 458, 458, 383 S.E.2d 533, 554 (1989). "This principle applies alike to those precepts of the common law that have been codified." *Id.*, 383 S.E.2d at 554. Consequently, to the extent that the General is asking the Court to rule that there can be no negligent or bad faith failure to settle because of the newly amended statute, the newly amended statute does not mention negligent or bad faith failure to settle. This Court cannot construe the newly amended statute to vitiate the insurer's common-law duty to protect its insured from legal liability when the statute does not even reference the duty.

1.      **O.C.G.A. § 9-11-67.1 Expressly Permits Demands Proposing Conditions Outside of O.C.G.A. § 9-11-67.1(a)(1).**

Contrary to the General's assertions, Defendant's demand complied with the dictates of O.C.G.A. § 9-11-67.1, as amended. In that amendment, the Georgia General Assembly preserved a claimant's ability to propose conditions in a demand in addition to those listed in O.C.G.A. § 9-11-67.1(a)(1). Subsection (b)(1) provides that the parties may agree to terms not listed in O.C.G.A. § 9-11-67.1(a)(1). Further, O.C.G.A. 9-11-67.1(c) provides that: "[n]othing in this Code section is intended to prohibit parties from reaching a settlement agreement in a manner and under terms otherwise agreeable to both the offeror and recipient of the offer." Despite this ability of an offeror to propose terms outside of those listed in O.C.G.A. § 9-11-67.1(a)(1) an offeree "may accept the [demand] by **providing written acceptance** of the material terms outlined in subsection (a) of this Code section in their entirety." O.C.G.A. § 9-11-67.1(b)(2) (emphasis added). Interestingly, the General did not assert that Defendant's demand was invalid in its purported acceptance, but that purported acceptance was not attached to the General's Complaint.

2.      **The General's Assertion that Defendant's Requiring Written Acceptance to be Mailed to a Physical Address Invalidated the Demand Fails as a Matter of Law.**

O.C.G.A. § 9-11-67.1(e) expressly permits an offeror to dictate the means and methods by which acceptance must be provided. An insurer's ability to accept a demand by accepting only those terms listed in O.C.G.A. § 9-11-67.1(a)(1) is *statutorily contingent* upon the insurer providing written acceptance in

compliance with O.C.G.A. § 9-11-67.1(e). Indeed, subsection (e) of the statute provides specific instructions concerning the delivery of written acceptance by dictating that an offer under the code section "shall include an address or a facsimile number or email address to which a **written acceptance** pursuant to subsection (b) of this Code section **may be provided**." O.C.G.A. § 9-11-67.1(e)(emphasis added). Notably, O.C.G.A. § 9-11-67.1(e) is written in the disjunctive and permits an offeror to dictate whether written acceptance may be provided to an address, facsimile number, or email address.

In compliance with O.C.G.A. § 9-11-67.1(e), Defendant's demand dictated that written acceptance may be provided to a physical address. (Doc. 1-1, pp. 10). Despite this clear direction, the General alleges it provided acceptance via email, facsimile, and to a physical location by way of a letter dated August 15, 2022, but that letter is not attached to Plaintiff's Complaint. (Doc. 1, ¶ 27). Moreover, the General's August 15, 2022, letter was sent to the incorrect address, but that letter was not attached to the Complaint.

### 3.   Defendant's Demand Complied with O.C.G.A. § 9-11-67.1(a)(2) in that it Contained Sufficient Bills and Records to Permit the General to Evaluate the Claim.

The consideration of whether sufficient bills and records were provided to permit the General to evaluate Defendant's claim must begin with an understanding of the General's duty to Defendant Michael Thomas Morris. Under Georgia law, once that opportunity to settle is presented, the insurer must assess the risks of not settling. *U.S. Fid. & Guar. Co.*, 116 Ga. App. at 94-95, 156 S.E.2d at 811. Paramount in this analysis is the insurer's obligation to conduct an independent investigation concerning the claim. *Cotton States Mut. Ins. Co. v. Phillips*, 110 Ga. App. 581, 584, 139 S.E.2d 412, 415 (1964). That means the insurer must consider: (1) the likelihood its insured will be found liable; and, (2) the total amount of damages likely to be awarded to the injured claimant. Considering those two factors, if the likely damages to be recovered by the injured exceeds the insured's policy limit, then the risk of not settling the case would be unreasonable. *S. Gen. Inc. Co. v. Holt*, 262 Ga. 267, 269, 416 S.E.2d 274, 276 (1992).

Pursuant to O.C.G.A. § 9-11-67.1(a)(2), a demand "shall include medical records or other records **in the offeror's possession** incurred as a result of the subject claim that are sufficient to allow the recipient to evaluate the claim." (emphasis added). First, Plaintiff's Complaint makes no allegation that Defendant was in

possession of medical records or other records which were not provided to the General in the demand. (Doc. 1). Moreover, Plaintiff's Complaint makes clear that at the time the demand was presented to the General, Defendant's counsel was candid that he was not in possession of all medical records and bills. (Doc. 1 at ¶ 42).

Plaintiff's Complaint simply misses the point of O.C.G.A. § 9-11-67.1(a)(2). That statute does not require that all medicals and bills in existence or in the possession of some third party be provided. Instead, all that is required is that all medical records and bills in the claimant's possession are provided and that those materials are sufficient to allow an evaluation of the claim. The General admits that Defendant produced $23,196.75 in medical bills with the demand. (Doc. 1 at ¶ 41). Moreover, Defendant's demand clearly indicated the bills produced were for local emergency care and that other bills and records would be forthcoming. (Doc. 1-1, pp. 8).

Considering what was provided in the demand in light of the General's $25,000.00 liability policy limit, more than sufficient information was provided to the General allowing it to evaluate Defendant's claim. The demand showed that the likely damages to be recovered by Defendant exceeded the Defendant Michael Thomas Morris policy limit, and the risk of not settling the case was unreasonable. The General cannot, in good faith, claim it was not provided with enough information to evaluate Defendant's claim in light of Defendant Michael Thomas Morris's minimum limits liability policy.

### iii. Count III and IV fail to State a Claim because the General Lacks Standing to Pursue Contractual Remedies.

As previously shown, the General is speciously requesting that this Court provide the General with a remedy upon an alleged contract to which the General was neither a party nor a third-party beneficiary. Under Georgia law, an action on a contract may only be "brought in the name of the party in whom legal interest in the contract is vested" or "the beneficiary of a contract made between other parties for his benefit". O.C.G.A. § 9-2-20(a)-(b). "For a third party to have standing to enforce a contract…it must clearly appear from the contract that it was intended for his benefit." *Backus v. Chilvis*, 236 Ga. 500, 502, 224 S.E.2d 370, 372 (1976). "The mere fact that he [a third party] would benefit from performance of the agreement is not alone

sufficient" to provide that third party with standing concerning the enforcement of the contract. *Id.*, 224 S.E.2d at 372.

At no point does the General's Complaint allege in earnest that it was a party to the alleged settlement contract nor does the General allege that it was a third-party beneficiary to the alleged contract. (Doc. 1). The parties to the alleged settlement would have been Defendant and Defendant Michael Thomas Morris and not the General. This is made clear by Item 7 of the demand wherein Defendant offers to execute a limited release for the benefit of Defendant Michael Thomas Morris and not the General. (Doc. 1-1, pp. 10). This Court should dismiss both contractual remedy claims on this basis.

Finally, as shown *supra*, the General failed to accept Defendant's demand and, consequently, there is no contract to enforce or basis to provide any other remedy.

### IV. CONCLUSION

This matter seeks to misuse and waste the Court's resources because it relies on hypothetical events that may or may not occur. Even if the General's negligent failure to settle this case was ripe for adjudication, the General's Complaint fails to state a claim for which relief can be granted. The General filed this action as tactical gamesmanship because it regrets its negligent failure to settle this case. If this Court allows this action to proceed, every insurer that fails to settle a time-limited demand will file a similar action. This Court should dismiss this action.

Respectfully submitted this 4th day of January, 2022.

THE SHRABLE LAW FIRM, P.C.
Attorneys for Defendant Daniel Mark Minick and
Defendant Minick Interiors, Inc.


  /s/    Beau T. Shrable
**BEAU T. SHRABLE,** Ga. Bar No.: 453977

PREPARED BY:


  /s/    Beau T. Shrable
**BEAU T. SHRABLE,** Ga. Bar No.: 453977
THE SHRABLE LAW FIRM
Post Office 221

Albany, Georgia 31702
T: (229)349-6291
F: (229) 329-4492
E: bts@shrablelawfirm.com

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that on the 5th day of January, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of the electronic filing to all CM/ECF participants, including:

Jeffery A. Kershaw, Esq.
jeff.kershaw@kershawwhite.com
R. Patrick White, Esq.
patrick.white@kershawwhite.com
5881 Glenridge Drive, Suite 100
Atlanta, Georgia 30328

*Attorneys for Plaintiff Permanent*
*General Assurance Corporation of Ohio*

Wesley B. Beamon, Esq.
wesbeamon@beamonlaw.com
504 Millard Fuller, Blvd.
Americus, Georgia 31709

*Attorney for Lynton Godwin*

Matthew R. Lawrence, Esq.
mattlawrence@youngthagard.com
Post Office Box 3007
Valdosta, Georgia 31604

*Attorney for Frederick Updike*

and U.S. Mail appropriately addressed to:

The Estate of Michael Thomas Morris
111 Rockdale Subdivision Loop
Americus, Georgia 31709

This 4th day of January, 2023.

THE SHRABLE LAW FIRM, P.C.
Attorneys for Defendant Daniel Mark Minick and
Defendant Minick Interiors, Inc.


/s/    Beau T. Shrable
**BEAU T. SHRABLE,** Ga. Bar No.: 453977